### In re LLOYD SECURITIES, INC., Debtor.

**Bankruptcy No. 90–098DAS.**
**Civ. A. Nos. 94–CV–1391, 94–CV–1416.**

United States District Court,
E.D. Pennsylvania.

June 20, 1995.

---

Richard L. Bazelon, Paul B. Bech, Bazelon & Less, Philadelphia, PA, for appellants in No. 94–CV–1416 and appellees in No. 94–CV–1391.

Warren T. Pratt, David A. Searles, Drinker Biddle & Reath, Philadelphia, PA, for Robert E. Shields, Trustee, appellant in No. 94–CV–1391 and appellee in No. 94–CV–1416.

Theodore H. Focht, Michael E. Don, Kevin H. Bell, Securities Investor Protection Corp., Washington, DC, for Securities Investor Protection Corp., appellant in No. 94–CV–1391 and appellee in No. 94–CV–1416.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

█ The issue in these cross-appeals from the United States Bankruptcy Court for the Eastern District of Pennsylvania concerns the extent to which the customers of a brokerage firm liquidated under the Securities Investor Protection Act of 1970, 15 U.S.C. §§ 78aaa, et seq. ("SIPA"), can recover the attorney's fees and costs incurred in connection with the liquidation proceedings. The Bankruptcy Court held that the customers could recover only to the extent that they satisfy the strictures of either 11 U.S.C. § 503(b)(3)(D) or 11 U.S.C. § 506(c) of the Bankruptcy Code (the "Code"). *In re Lloyd Sec., Inc.*, 163 B.R. 242, 245 (Bankr.E.D.Pa. 1994). Upon application of the standards borrowed from the Code to the facts presented, the Bankruptcy Court permitted near total recovery for only one of the two applications for compensation at issue here. Further, the Bankruptcy Court concluded that the customers were not entitled to recover compensation under the common fund doctrine. The Trustee and the Securities Investor Protection Corporation ("SIPC") filed an appeal, docketed at 94–CV–1391, of the order granting compensation for the majority of the services set forth in the first application. Action No. 94–CV–1416 is the customers' appeal of the order denying them compensation for the services delineated in the other application. This Memorandum addresses both appeals. We apply a clearly erroneous standard to the Bankruptcy Court's factual findings and a plenary standard to its conclu-

sions of law. *In re Siciliano*, 13 F.3d 748, 750 (3d Cir.1994).

## I. BACKGROUND

### A. SIPA

At the outset, we offer this brief, tailored overview of the purpose and operation of SIPA to place the issues presented in the proper context. In 1970, Congress enacted SIPA in order to address the calamitous impact that the failure of brokerage firms had on both customer assets and investor confidence. *Securities Investor Protection Corp. v. Barbour*, 421 U.S. 412, 415, 95 S.Ct. 1733, 1736, 44 L.Ed.2d 263 (1975) (citations omitted). Accordingly, Congress established SIPC, a non-profit, private corporation to which most registered broker-dealers must belong. 15 U.S.C. § 78ccc. SIPC is required to maintain a fund, derived from assessments on SIPC members, from which it provides financial relief to customers of a failing broker-dealer. In this way, SIPA creates "a new form of liquidation proceeding, applicable only to member firms, designed to accomplish the completion of open transactions and the speedy return of most customer property." *Barbour*, 421 U.S. at 416, 95 S.Ct. at 1736.

SIPA empowers SIPC to file an application for a protective order with the district court if it determines that an SIPC member has either failed or is in danger of failing to meet its obligations to its customers and is the subject of a pending court proceeding in which a trustee or receiver has been named. § 78eee(a)(3). After the court issues a protective decree, it then appoints a trustee and trustee's counsel and removes the matter to the bankruptcy court for the liquidation proceeding. §§ 78eee(b)(3) & (4). Customers then submit claims to the trustee, who is charged with the prompt discharge of the claims, as well as the enforcement of rights of subrogation, the distribution of customer property, and the liquidation of the member firm. § 78fff(a).

### B. Factual Background

In June of 1990, the Securities and Exchange Commission ("SEC") moved to shut

down Lloyd Securities, Inc. (the "Debtor"), a Philadelphia brokerage firm, amid allegations of widespread misappropriation of customer funds by the Debtor's principals, Michael Lloyd and Warren C. Nachmann. Six months later, in December of 1990, SIPC filed an application for a protective proceeding pursuant to SIPA. Robert E. Shields, Esquire was appointed Trustee, and the matter was transferred to the Bankruptcy Court for the administration of the liquidation of the Debtor. In May of 1991, the Trustee filed a number of voluntary Chapter 11 proceedings on behalf of Messrs. Lloyd and Nachmann and other entities owned by them. These actions were administered jointly in the case of *In re IBEX International, Inc.,* Bankr. No. 91–12986DAS (the "IBEX cases"). A year later, the customers filed a motion seeking to administer the IBEX cases jointly with the SIPA proceeding. SIPC and the Trustee opposed the motion, but the Bankruptcy Court issued an Order in September of 1991 in which it expressed its intention to grant the motion once the parties prepared an appropriate order. *In re Lloyd Sec., Inc.,* No. 90–0985S, 1991 WL 173319 (Bankr.E.D.Pa. Sept. 5, 1991).

The Trustee instructed the Debtor's customers to submit their claims in the late winter of 1991. By April 1, 1991, the great majority of these claims had been submitted. By April of the next year, however, the Trustee had not yet ruled on a number of the claims. Thus, in May of 1992, the customers filed a motion to compel the Trustee to rule on the customers' claims. The Bankruptcy Court conducted hearings on the customers' motion on June 11, August 6, and October 8, 1992. The Bankruptcy Court declined to issue a ruling compelling the Trustee to rule on the claims. Nonetheless, the Trustee did indeed rule on most of the customers' claims during the late summer and early fall of 1992.

In December of 1991, the Trustee commenced an action in the Bankruptcy Court on fidelity bonds issued by National Union Fire Insurance Company of Pittsburgh ("National Union"). The customers intervened and participated in the action, providing assistance in the development of the case against National Union. The action eventually settled for $595,000. Meanwhile, in July of 1990, a number of the Debtor's customers, including James Deamer,[1] brought an action in this Court (the *"Deamer* action") on their own behalf and on behalf of all similarly situated customers against the Debtor, the Debtor's principals, and a number of other entities that were involved in transactions with the Debtor, including Newbridge Securities, Inc. ("Newbridge"), Citibank, Equibank, Liberty Savings Bank, and Delaware Charter Guarantee and Trust Company (the "Banks").

The complex nature of the *Deamer* action delayed its resolution. As a result, the Trustee initiated discrete adversary proceedings against Newbridge and the Banks in the summer of 1992. The customers intervened in both of these actions to moot Newbridge's contention that the Trustee lacked standing to bring them. The customers were active participants in these actions, assisting the Trustee by proffering witnesses, participating in depositions, gathering evidence to support the allegations, and advancing legal arguments. Eventually, the adversary proceedings against Newbridge and the Banks settled in January, 1993 for $1,250,000.

### C. *The Applications for Compensation*

The customers, through their attorney, Richard Bazelon of the Philadelphia law firm of Bazelon & Less, submitted to the Bankruptcy Court three applications for compensation for services rendered, two of which are at issue here. In the first application ("Application I"), filed in March of 1992, Mr. Bazelon requested compensation totalling $22,120.25 for services and costs incurred in connection with the filing of the motion to administer the IBEX cases jointly with the SIPA proceeding. In September of 1993, Mr. Bazelon submitted an application ("Application III") requesting compensation for all other services performed in connection

---

**1.** The other customers bringing this suit included Alan Smith, John Kochersperger, Dwayne Simpson, Kathryn Simpson, Joseph McGuckin, Georgiana McGuckin, Glorianne Bentz, Gloria Bentz, Alice McCabe, Larry Rothstein and Faye Rothstein.

with the SIPA proceeding and the IBEX cases in the amount of $259,003.25. SIPC recommended that the Bankruptcy Court deny both applications.

The customers submitted their applications pursuant to 15 U.S.C. § 78eee(b)(5), which provides as follows:

> (5) **Compensation for services and reimbursement of expenses.—**
>
> (A) **Allowances in general.**—The court shall grant reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred (hereinafter in this paragraph referred to as "allowances") by a trustee, and by the attorney for such a trustee, in connection with a liquidation proceeding. No allowances (other than reimbursement for proper costs and expenses incurred) shall be granted to SIPC or any employee of SIPC for serving as trustee. Allowances may be granted on an interim basis during the course of the liquidation proceeding at such times and in such amounts as the court considers appropriate.
>
> (B) **Application for allowances.**—Any person seeking allowances shall file with the court an application which complies in form and content with the provisions of Title 11 governing applications for allowances under such title. A copy of such application shall be served upon SIPC when filed. The court shall fix a time for a hearing on such application, and notice of such hearing shall be given to the applicant, the trustee, the debtor, the creditors, SIPC, and such other persons as the court may designate, except that notice need not be given to customers whose claims have been or will be satisfied in full or to creditors who cannot reasonably be expected to receive any distribution during the course of the liquidation proceeding.
>
> (C) **Recommendations of SIPC and awarding of allowances.**—Whenever an application for allowances is filed pursuant to subparagraph (B), SIPC shall file its recommendation with respect to such allowances with the court prior to the hearing on such application and shall, if it so requests, be allowed a reasonable time after such hearing within which to file a further recommendation. In any case in which such allowances are to be paid by SIPC without reasonable expectation or recoupment thereof as provided in this chapter and there is no difference between the amounts requested and the amounts recommended by SIPC, the court shall award the amounts recommended by SIPC. In determining the amount of allowances in all other cases, the court shall give due consideration to the nature, extent, and value of the services rendered, and shall place considerable reliance on the recommendation of SIPC.
>
> (D) **Applicable restrictions.**—The restrictions on sharing of compensation set forth in section 504 of Title 11 shall apply to allowances.
>
> (E) **Charge against estate.**—Allowances granted by the court, including interim allowances, shall be charged against the general estate of the debtor as a cost and expense of administration. If the general estate is insufficient to pay allowances in whole or in part, SIPC shall advance such funds as are necessary for such payment.

15 U.S.C. § 78eee(b)(5).

### D. *The Bankruptcy Court's Opinion*

The Bankruptcy Court first concluded that while § 78eee(b)(5)(C) governed the issue of whether a party may be awarded compensation, the standards to apply in determining the services for which compensation may be awarded must be borrowed from the Code. *Lloyd,* 163 B.R. at 251. Thus, the court recognized a Congressional intent to incorporate into SIPA's compensation provision the appropriate Code-generated rules. In support of its conclusion, the court first cited § 78fff(b), which provides that "[t]o the extent consistent with the provisions of this chapter, a liquidation proceeding shall be conducted in accordance with, and as though it were being conducted under chapters 1, 3, and 5 and subchapters I and II of chapter 7 of Title 11." Further, the court noted refer-

ences to the Code in SIPA, including those appearing in § 78eee(b)(5)(B), which provides that a fee application must comply "in form and content with the provisions of title 11 governing applications for allowances," and § (b)(5)(D), which incorporates § 504 of the Code by reference in the context of restrictions on sharing of compensation. Finally, the court considered the similarity between the operative language § (b)(5)(C), which requires the court to consider "the nature, extent, and value of the services rendered," and the language of § 503(b)(4) of the Code, which states that compensation is to be awarded "based on the time, the nature, the extent, and the value of such services." The court therefore concluded that the standards set forth under the Code "should be liberally borrowed" in construing SIPA's compensation provision. *Lloyd,* 163 B.R. at 252.

The Bankruptcy Court then went on to determine which provisions it should lift from the Code and apply in the SIPA context. It first selected 11 U.S.C. § 503(b), which allows compensation for administrative expenses and professional fees as follows:

(b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including—

\* \* \* \* \* \*

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—

\* \* \* \* \* \*

(D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title; or

\* \* \* \* \* \*

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant.

11 U.S.C. § 503(b).

The court then considered cases construing § 503(d), and concluded that compensation for services could be awarded only where the services: (1) benefitted the estate or all parties in the case; (2) had a direct, substantial and positive effect upon the estate; (3) and were not duplicative of services performed by others. *Id.* at 254 (quoting *In re FRG, Inc.,* 124 B.R. 653, 658 (Bankr. E.D.Pa.1991)). Further, the court noted that compensation would not be allowed where the expenses were incurred in the party's own self-interest, that is, " 'where the expense at issue was incurred primarily for the benefit of the creditor and provided only an incidental benefit to the estate.' " *Id.* (quoting *In re Lease–A–Fleet, Inc.,* 148 B.R. 419, 426–27 (Bankr.E.D.Pa.1992)).

Drawing an analogy between the relationships of an administrative creditor and a debtor in the bankruptcy context and SIPC and a debtor under SIPA, the court also drew upon 11 U.S.C. § 506(c), which allows for reimbursement of an administrative creditor to the extent that its efforts benefitted or preserved the collateral of a secured creditor. Section 506(c) provides that "[t]he trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." Cases construing § 506(c) have held that recovery is permitted only if the applicant satisfies either an objective test, which demands proof of a direct benefit to the collateral in issue, or a subjective test, which is met when the secured creditor has consented to the performance of services on its behalf. *Id.* at 255 (citing *In re Orfa Corp. of Philadelphia,* 149 B.R. 790, 798–99 (Bankr.E.D.Pa.1993) and *In re Cann & Saul Steel Co.,* 86 B.R. 413, 418 (Bankr.E.D.Pa.1988)). Thus, the court concluded that the customers were entitled to compensation only if they could

"prove that their services provided actual, direct benefit to SIPC or that SIPC consented to [the performance of services on its behalf]." *Id.*

The Bankruptcy Court then applied these standards to Applications I and III and concluded that the customers could only recover compensation for the services delineated in Application I, regarding the customers' motion to administer the SIPA proceeding jointly with the IBEX cases. The court held that while the application could not satisfy § 503(b), compensation could be granted under the § 506(c) objective test in that the customers alone brought the motion, the Trustee and SIPC opposed it, and joint administration ultimately benefitted SIPC. *Id.* at 258. As for Application III, however, the court denied it in its entirety, holding that neither § 503(b) nor § 506(c) could be satisfied with respect to any of the requests for compensation contained therein. *Id.* at 255–58. Finally, the court held that the customers could not collect under the common fund doctrine, finding the doctrine inapplicable to the circumstances presented. *Id.* at 258–59.

## II. *DISCUSSION*

### A. *The Standard Governing the Instant Compensation Applications*

Our analysis begins with a determination of the proper standard to apply to the customers' applications for compensation and reimbursement under SIPA. We first note that the compensation provision defines "allowances" to include "reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred." § 78eee(b)(5)(A). Every applicant seeking allowances, whether a trustee, trustee's counsel, or other interested person such as the customers here, must submit "with the court an application which complies in form and content with the provisions of Title 11 governing applications for allowances under such title." § 78eee(b)(5)(B). Once the application is filed, SIPC is required to submit its recommendation with respect to the allowances. The court then determines the amount of allowances, giving "due consideration to the nature, extent, and value of the services rendered, and ... plac[ing] consid-

erable reliance on the recommendation of SIPC." § 78eee(b)(5)(C).

■ Within subparagraph (5)(B), we find a clear indication of Congress's intent that courts evaluate fee applications in the same manner that such applications are adjudged in the Title 11 context. In so doing, we decline to endorse the customers' contention that a fee application submitted pursuant to SIPA need only comply with the procedural aspects of the Code. *See In re Government Sec. Corp.,* 972 F.2d 328, 330 n. 1 (11th Cir.1992) (rejecting the argument that § 78fff incorporates the procedural, but not substantive aspects of the Code to the extent consistent with SIPA), *cert. denied,* —— U.S. ——, 113 S.Ct. 1366, 122 L.Ed.2d 744 (1993). Indeed, we read SIPA's mandate that a fee application comply in "content" with applications submitted pursuant to the Code as evidence of Congress's intent with respect to an entity's eligibility to receive allowances under SIPA. Thus, in considering whether one qualifies for allowances under SIPA, a court must decide whether the substance of the application complies "with the provisions of Title 11 governing applications for allowances under such title." § 78eee(b)(5)(B). In other words, an applicant who seeks compensation for services under SIPA is eligible to recover such compensation only to the extent that the services would be compensable under the Bankruptcy Code.

■ We must therefore determine which of the Code's provisions fit the criteria set forth in SIPA; that is, which of the Code's provisions govern applications for allowances akin to the ones at issue here. We concur with the Bankruptcy Court's finding that § 503(b) is the "obvious point of reference," since it "pertains to allowances of administrative expenses, including compensation of professionals." *Lloyd,* 163 B.R. at 254. Moreover, we find that §§ 503(b)(3)(D) & (b)(4), which allow a creditor of a debtor's estate to receive compensation for professional services under certain circumstances, to be particularly analogous to the instant situation. In so finding, we note the similarity between the operative language in § 503(b), which provides that professional fees are to be

awarded "based on the time, the nature, the extent, and the value of such services," § 503(b)(4), and SIPA's language, which requires the court to consider "the nature, extent, and value of the services rendered." § 78eee(b)(5)(C). Accordingly, we conclude that Congress had § 503(b) in mind when it mandated that a SIPA applicant, situated as the customers are here, submit an allowance request consistent with the appropriate Code provision.

■ Despite its apparent applicability, SIPC and the Trustee argue that we should not apply § 503(b)(3)(D). In support of their argument, SIPC and the Trustee cite § 78fff, which provides that "[t]o the extent consistent with the provisions of this chapter, a liquidation proceeding shall be conducted in accordance with, and as though it were being conducted under chapters 1, 3, and 5 and subchapters I and II of chapter 7 of Title 11." 15 U.S.C. § 78fff. Since § 503(d) applies only to cases under chapter 9 or 11 of Title 11, SIPC and the Trustee reason, it cannot be applied to a SIPA proceeding. In rejecting this argument, we first note that the provision under consideration today, the one under which the customers assert an entitlement to compensation, is not restricted to selected chapters of Title 11, but instead specifically incorporates Title 11 *in toto*. Moreover, § 78fff limits the incorporation of Code principles to selected chapters only "to the extent consistent with" SIPA. Finally, we agree with the Bankruptcy Court's conclusion regarding § 78fff's impact on our analysis: Congress could not have intended the interpretation urged by SIPC and the Trustee, since it "would preclude creditors like Customers from recovery of compensation in *every* SIPA case." *Lloyd*, 163 B.R. at 252–53. Thus, we conclude that Congress would have courts apply the principles generated under 11 U.S.C. § 503(b)(3)(D) to the instant applications for allowances.

■ The Bankruptcy Court also concluded that it could apply 11 U.S.C. § 506(c) in order to determine whether the customers' fee applications should be granted. Section 506(c) provides as follows: "The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs

and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." Thus, section 506(c) allows a trustee to recover the reasonable costs and expenses expended to preserve or dispose of a secured creditor's collateral. Moreover, our Court of Appeals has held that parties other than the trustee can recover under § 506(c) only when that party had a colorable claim and "was the only creditor that would zealously pursue that claim." *In re McKeesport Steel Castings Co.*, 799 F.2d 91, 94 (3d Cir.1986). As we noted above, however, SIPA's compensation statute permits recovery of expenses incurred in connection with a SIPA liquidation proceeding. This case involves applications for recovery of attorney's fees and costs submitted by the customers of a failed brokerage firm. Section 506(c), on the other hand, applies only when the trustee or a party acting in lieu thereof acts to preserve collateral. Thus, it is not a Title 11 provision governing applications for allowances, as they are defined in SIPA. Accordingly, we conclude that the Bankruptcy Court erred when it applied section 506(c) to the instant applications.

■ The customers are therefore eligible to recover allowances only to the extent that they satisfy the strictures of 11 U.S.C. § 503(b)(3)(D). The standard under which § 503(b)(3)(D) motions are judged was aptly set forth by the Bankruptcy Court, and is not in dispute here. Thus, in order for a party to recover compensation for its services, it must show that the services (1) benefitted the estate itself or all of the parties to the litigation; (2) had a direct, significant, and demonstrable effect on the estate; and (3) were not duplicative of services performed by others. *Lease–A–Fleet*, 148 B.R. at 426; *FRG*, 124 B.R. at 658. Furthermore, a § 503(b)(3)(D) application must be denied if an expenditure is found to be in the movant's self-interest; that is, if "the expense at issue was incurred primarily for the benefit of the creditor and provided only an incidental benefit to the estate." *Lease–A–Fleet*, 148 B.R. at 426. Section 503(b)(3)(D) recovery is warranted, however, even if the creditor receives an incidental benefit, as long as the services

benefit the estate primarily. *Id.* at 427. With these principles in mind, we now review the Bankruptcy Court's determinations regarding the customers' applications under the standard articulated above.

### B. *The Customers' Compensation Applications*

▮ The services for which the customers seek compensation include: (1) their role in the initiation of the SIPA proceeding; (2) their participation as intervenors in the suits brought by the Trustee against National Union, Newbridge and the Banks; (3) their role in the Trustee's recommendation of their claims for full payment; and (4) their prosecution of the motion to administer the SIPA proceeding jointly with the IBEX cases. As we noted above, the Bankruptcy Court found that the customers were not eligible to recover compensation for any of the services set forth in their applications for allowances under the § 503(b) standard. We now review these determinations, mindful that we may reverse the Bankruptcy Court's opinion with regard to a factual determination only if we find it to be clearly erroneous; and that if we are confronted with a mixed question of fact and law, we apply a plenary standard to the legal component and a clearly erroneous standard to the factual component. *Meridian Bank v. Alten,* 958 F.2d 1226, 1229 (3d Cir.1992) (citing *In re Sharon Steel Corp.,* 871 F.2d 1217, 1222 (3d Cir.1989)).[2]

### 1. *Initiation of the SIPA Proceeding*

▮ The customers argue that they should be compensated for the role they played in bringing about the initiation of the SIPA proceeding. To support their contention, they point to the efforts made by their attorney, Mr. Bazelon, to convince the SEC that a SIPA proceeding was warranted. Were it not for the efforts of Mr. Bazelon, the customers argue, the SIPA proceeding would never have occurred, and thus SIPC would never have enjoyed the resulting benefit. We first note that the customers failed to convince the Bankruptcy Court that their actions triggered the filing of the SIPA proceeding. Moreover, the court held that even if it were so convinced, the services for which the customers seek compensation were not compensable under SIPA because they could not satisfy the criteria set forth under § 503(b)(3)(D). *Lloyd,* 163 B.R. at 256.

We agree, and affirm the Bankruptcy Court's decision with respect to these services on these grounds.[3] As we noted above, the customers are entitled to compensation only if the services at issue benefitted the estate or all of the parties to the litigation. The Bankruptcy Court determined, as a matter of fact, that "[t]he only beneficiaries of this proceeding were the customers themselves and others similarly situated." *Id.* Nothing in the record supports the notion that this conclusion is clearly erroneous. Indeed, as the customers themselves argue, the very purpose of a SIPA proceeding is to benefit customers. The customers here were the primary beneficiaries of the SIPA proceeding, and are therefore precluded from recovery of compensation for these actions under SIPA. As a result, we conclude that the Bankruptcy Court properly denied the customers' application for compensation for the services concerning the initiation of the SIPA proceeding.

### 2. *Participation in Related Suits*

▮ The customers also seek compensation for the services they provided regarding

---

**2.** In an apparent attempt to have us apply a de novo standard to the factual issues presented for our review, the customers argue that the Bankruptcy Court did not make findings of fact. Instead, the customers contend, the Bankruptcy Court issued a set of vague and inconclusive "musings" regarding factual issues. For example, the customers point to various portions of the opinion wherein the court states that "it is not clear" that the customers caused the initiation of the SIPA proceeding. *Lloyd,* 163 B.R. at 256–57. We construe such language not as an expression of the Bankruptcy Court's abdication of its duty to make factual findings, but instead as indicative of its conclusion that the customers failed to carry their burden of persuasion with respect to the fact at issue. As such, we conclude that the Court did make factual findings, and we will apply to them a clearly erroneous standard.

**3.** Thus, we need not consider whether the Bankruptcy Court's failure to conclude that the customers caused the filing of the SIPA proceeding was clearly erroneous.

their participation as intervenors in the actions brought by the Trustee against Newbridge, National Union, and the Banks. In denying the customers' application, the Bankruptcy Court first noted that the actions taken by the customers had occurred before the filing of the SIPA proceeding. Thus, since only post-filing services are compensable as administrative claims under § 503, *see In re Hemingway Transp., Inc.*, 954 F.2d 1, 5 (1st Cir.1992), the services for which the customers seek compensation were not recoverable under SIPA. *Lloyd*, 163 B.R. at 257. Moreover, the court concluded that the customers' actions were, in large measure, duplicative of the actions taken by Trustee's counsel; that no general creditors of the general estate benefitted from the customers' actions; and that the customers were acting in their own interest in pursuing these claims. *Id.*

The customers now argue that the court erred in finding that customers' actions were taken before the filing of the SIPA proceeding. We need not address this issue, however, because of our conclusion that the Bankruptcy Court's findings of fact regarding the value of the services and the parties who benefitted therefrom are not clearly erroneous. Indeed, there is ample evidence on the record to support the conclusion that the Trustee managed the litigation competently. The Trustee pursued settlement with the related institutions in an effort to recover funds at reduced expense. Where settlement efforts failed, the Trustee initiated suit to recover funds to pay customer claims. Moreover, the record reflects that the Trustee obtained tolling agreements from institutions he did not sue so as to protect those interests, thus refuting the customers' claim that the Trustee did not act to toll the applicable statute of limitations. Since the Bankruptcy Court's findings of fact are supported by the record, and lead to the conclusion that the customers are ineligible to recover for the services under SIPA, we must affirm the Bankruptcy Court's holding to the extent that it denied recovery to the customers for these services.[4]

### 3. *Motion to Compel Payment of Customer Claims*

 The customers also seek compensation for the services performed in connection with the filing and prosecution of their motion to compel the Trustee to rule on the customers' claims. The customers contend that the Trustee delayed the payment of the claims to an unreasonable extent, and that their motion prodded the Trustee to action. The Bankruptcy Court concluded that the customers did not cause the Trustee to act, and that in any event, the customers could not satisfy § 503 with respect to these services because the customers were acting in the interest, and to the benefit, of no one but themselves. *Id.* at 258. Both conclusions are supported by the record. First, the record does not reveal a link between the filing of the motion and the payment of the claims sufficient for us to conclude that the customers brought about action by the Trustee. Indeed, the Bankruptcy Court declined to issue a ruling compelling the Trustee to act. Finally, to the extent, if any, that the customer's actions did bring about the payment of some claims, such actions were undertaken strictly to benefit the customers themselves. Thus, they are not compensable under SIPA.

### 4. *Joint Administration Motion*

 The Bankruptcy Court held that the customers were entitled to recover for the services provided in connection with the prosecution of the joint administration motion, but did so pursuant to § 506, and expressly found it "impossible to include these services within the scope of § 503(b)(3)(D), because no general creditors of the Debtor benefitted therefrom." *Id.* As we concluded above, however, the Bankruptcy Court erred when it held that § 506 could properly be applied in a SIPA proceeding. Moreover, the customers do not point to any evidence suggesting that the court's finding regarding their ineligibility under § 503, as incorporated by SIPA, is clearly erroneous. Thus, the

---

4. Having affirmed the Bankruptcy Court's ruling with respect to these services on the above-stated grounds, we need not consider whether the customers, by initiating the *Deamer* action, preserved the Trustee's claims against Newbridge and the Banks.

award for the services at issue here cannot stand, and must be reversed.[5]

### C. *The Common Fund Doctrine*

■ The customers also argue, as an alternative theory, that they are entitled to compensation under the common fund doctrine. While the "American Rule" holds that each party must bear its own legal costs and expenses, the exception known as the common fund doctrine provides that such fees may be awarded where an attorney recovers a common fund for the benefit of persons other than the attorney's client. *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980). Courts invoking this doctrine cite an unjust enrichment rationale, reasoning that "it would be unfair to require one party to bear the entire expense which results in the benefit to a large class of persons." *Cooperstock v. Pennwalt Corp.,* 820 F.Supp. 921, 923 (E.D.Pa.1993) (citing *Boeing* ); *see Vincent v. Hughes Air West, Inc.,* 557 F.2d 759, 770 (9th Cir.1977) (noting that the "doctrine is rooted in concepts of quasi-contract and restitution"). The doctrine is invoked to spread the costs of the litigation evenly, so that one beneficiary does not bear the expenses while others receive a benefit at no cost. *Vincent,* 557 F.2d at 769. Accordingly, the common fund doctrine most appropriately applies when (1) the class of persons benefitted is small and identifiable, (2) the benefit can be traced with some accuracy, and (3) the costs of the litigation can be accurately assigned to those who benefit from it. *Boeing,* 444 U.S. at 478–79, 100 S.Ct. at 749–50; *In re Fesco Plastics Corp., Inc.,* 996 F.2d 152, 157 (7th Cir.1993).

■ At the outset, we note our agreement with the Bankruptcy Court's conclusion that the "[common fund] doctrine could be successfully invoked by creditors' counsel in a SIPA proceeding to obtain compensation not otherwise obtainable." *Lloyd,* 163 B.R. at 259. Our Court of Appeals has acknowledged that the doctrine is available in a SIPA proceeding, and should be considered as an alternative grounds under which counsel can seek compensation. Indeed, in *SEC v. Aberdeen Sec. Co.,* 526 F.2d 603 (3d Cir.1975), the court remanded the action to the district court, directing it to "determine the applicability of the [common fund] doctrine to this case." *Id.* at 607.

While the doctrine should be considered in the SIPA context generally, however, we conclude that it cannot support an award for the customers in the present case. The customers assert that SIPC was the primary beneficiary of the customers' labors, and that it should be made to compensate them accordingly. It cannot be said, however, that SIPC and the Trustee have been unjustly enriched as a result of the customers' efforts. Indeed, as the Bankruptcy Court concluded, the Trustee was an active participant, and not some passive beneficiary, who "retained very competent control" over the matters at hand. *Lloyd,* 163 B.R. at 256. Accordingly, we conclude that SIPC and the Trustee are not proper targets of a bid to recover under the common fund doctrine. As a result, we will affirm the Bankruptcy Court's decision to the extent that it denied the customers' fee request pursuant to the doctrine.

### III. *CONCLUSION*

For the reasons set forth above, and having considered and rejected the customers' remaining arguments, we will reverse and remand the Bankruptcy Court's ruling with regard to the appeal filed by the Trustee and SIPC, docketed at No. 94–CV–1391, and instruct the Bankruptcy Court to enter an order denying the customers' request for compensation set forth in Application I. With respect to the appeal filed by the customers and docketed at No. 94–CV–1416, however, we will affirm the Bankruptcy

---

5. Almost conceding that compensation was erroneously awarded pursuant to § 506, the customers argue that we should affirm the award on other grounds: that the customers are entitled to compensation under § 503 of the Code, since the IBEX cases were in Chapter 11 when the services were performed. This line of argument was not presented to the Bankruptcy Court. As a result, we will not consider the question. *See Butler Consumer Discount Co. v. Cain,* 50 B.R. 388, 390 (W.D.Pa.1985) ("Since the issue appears to have been raised for the first time in an appellate brief, it will not be considered.").

Court's decision.[6] An appropriate order follows.

### ORDER

AND NOW, this 20th day of June, 1995, upon consideration of the Appeals from the Bankruptcy Court's Opinion of January 21, 1994, docketed at Nos. 94–CV–1391 and No. 94–CV–1416, it is hereby ORDERED, for the reasons set forth in the preceding memorandum, that:

1. Regarding the Appeal docketed at No. 94–CV–1391, the Bankruptcy Court's Opinion is hereby REVERSED and REMANDED. The Bankruptcy Court shall enter an Order denying the Fee Application designated as "Application I" in the attached Memorandum.

2. Regarding the Appeal docketed at No. 94–CV–1416, the Bankruptcy Court's Opinion is hereby AFFIRMED.

---

6. The customers finally argue that they are entitled to the attorney's fees incurred in connection with the pursuit of the applications. In light of our disposition, however, we must reject their contention.