

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-6-1996

# In Re: Lloyd Securities, Inc.

Precedential or Non-Precedential:

Docket 95-1543

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"In Re: Lloyd Securities, Inc." (1996). *1996 Decisions.* Paper 227.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/227

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

IN RE: LLOYD SECURITIES, INC.,
Debtor

ARTHUR ALPERSTEIN, GLORIA BENTZ, GLORIANNE BENTZ,
HERMAN BERKOWITZ, LORRAINE BERKOWITZ, JAMES DEAMER,
EMPIRICAL ENTERPRISES, INC., KENNETH FELZER, RUTH HOFFMAN,
LLOYD HUMPHREY, RICHARD KATZ, LINDA KATZ, HARRIET KIRSCH,
JOHN KOCHERSPERGER, ALICE McCABE, JOSEPH McGUCKIN,
PHYLLIS NEWCOMER, TIMOTHY NYLAND, JAMES NYLAND,
VERNETTA NYLAND, LARRY ROTHSTEIN, FAYE ROTHSTEIN,
DWAYNE SIMPSON, KATHRYN SIMPSON, ALAN SMITH,
ESTATE OF RUSSELL SNYDER, MICHAEL SOROKER,
BARBARA SOROKER, and BAZELON & LESS, *
Appellants

* (Amended as per the Clerk's 7/18/95 Order)


ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civil Action Nos. 94-01391 and 94-01416)


Argued September 13, 1995

Before: MANSMANN, SCIRICA and NYGAARD, <u>Circuit Judges</u>

(Opinion Filed February 6, 1996)


RICHARD L. BAZELON, ESQUIRE (Argued)
PAUL B. BECH, ESQUIRE
Bazelon & Less
1515 Market Street, 7th Floor
Philadelphia, PA 19102
Attorneys for Appellants

STEPHEN P. HARBECK, ESQUIRE (Argued)
KEVIN H. BELL, ESQUIRE
Securities Investor Protection Corporation
805 15th Street, N.W., Suite 800
Washington, DC 20005

Attorney for Appellee Securities Investor


WARREN T. PRATT, ESQUIRE (Argued)
DAVID A. SEARLES, ESQUIRE
Drinker, Biddle & Reath
1345 Chestnut Street
Philadelphia National Bank Building
Philadelphia, PA 19107-3496
Attorney for Appellee Shields




OPINION OF THE COURT


NYGAARD, Circuit Judge.

The customers of a failed securities dealer, Lloyd Securities, Inc., and their attorneys sought fees from the res created by the dealer's liquidation under the Securities Investor Protection Act ("SIPA"). The district court denied the motion and the customers and attorneys appeal. We will affirm.

I.

The facts of this case are well-stated in the opinions of the district and bankruptcy courts. See In re Lloyd Securities, Inc., 183 B.R. 386 (E.D. Pa. 1995); In re Lloyd Securities, Inc., 163 B.R. 242 (Bankr. E.D. Pa. 1994). We will assume the reader is familiar with those opinions and present only a summary.

A.

The Securities and Exchange Commission sued Lloyd Securities and several related entities. The SEC alleged that Lloyd and its principals engaged in a scheme to defraud investors

2

in violation of the securities laws.  The court granted the requested relief and appointed a receiver.  Shortly thereafter, customers of Lloyd Securities brought a class action against Lloyd Securities, its principals and other parties that had participated in the customers' securities transactions.  This came to be known as the Deamer case.

The Securities Investor Protection Corporation ("SIPC") filed an application in the SEC action for a protective decree, turning the receivership into a liquidation.  The liquidation proceeding was then referred to the bankruptcy court.  The customers assert as a basis for their recovery that they were instrumental in causing the SIPC to seek the liquidation of Lloyd Securities, although this is disputed.

The trustee filed a number of chapter 11 cases on behalf of Lloyd's principals and entities related to Lloyd Securities.  These cases were all administered jointly and were known as the IBEX cases.  The customers then moved to have the IBEX cases administered jointly with the SIPA liquidation itself in order to save administrative costs.  Although the trustee and the SIPC opposed the motion, the bankruptcy court indicated its intention to grant it and the cases were ultimately administered together.

The trustee instructed Lloyd's customers to submit their net equity claims by April 1991; yet, by May 1992 payment had been made on only five of them, leaving approximately 85 outstanding.  This led the customers to file a motion to compel the trustee to rule on their claims.  The district court never

actually decided this motion, but by September 1992, the trustee had ruled on most of the claims.

The trustee also filed adversary proceedings against Newbridge Securities, Inc. and several banks.  In response to those defendants' allegations that the trustee lacked standing to bring the claims, the customers intervened and participated actively in that litigation, which ultimately settled in the plaintiffs' favor.

B.

Because of their direct involvement in the above litigation, the customers submitted to the bankruptcy court applications for compensation under SIPA, specifically 15 U.S.C. § 78eee(b)(5).  The first of these applications sought approximately $22,000 for services rendered in connection with the motion to administer the IBEX cases and the SIPA liquidation jointly.  The other requested almost $260,000 for all other services they rendered in actually litigating both proceedings. The SIPC opposed both applications.

The bankruptcy court held that, while compensation was governed generally by SIPA § 78eee(b)(5)(C), Congress intended the specific standards of the Bankruptcy Code as a substantive overlay to SIPA.  Accordingly, the court ruled that "the standards established under the Code for compensation applications, if not all of the Code's specific restrictions, should be liberally borrowed in interpretation of [§ 78eee(b)](5)(C) as well."  163 B.R. at 252.

4

Nevertheless, the bankruptcy court rejected SIPC's contention that the customers' remedy was limited to §503(b)(3)(D) of the Code. Although that section would appear to contemplate a compensation claim on behalf of customer-creditors, the court noted that it specifically does not apply to a chapter 7 proceeding, which is precisely how a SIPA liquidation is conducted. See 15 U.S.C. § 78fff(b). SIPC's argument would thus preclude recovery of compensation for customers in all SIPA cases, a result the bankruptcy court thought that Congress could not have intended without explicit statutory language to that effect. See 163 B.R. at 252-53.

Even so, the bankruptcy court concluded that, while §503(b)(3)(D)'s exclusion of chapter 7 proceedings could not be applied literally, its substantive standards for recovery should be applied in a case arising under SIPA. Id. at 254. Looking to the caselaw interpreting that section, it held that recovery was possible only if the applicants' services were not duplicative and benefitted the estate itself.

The court also imported the standard of 11 U.S.C. §506(c) as a criterion for determining the customers' eligibility for compensation, even though that section was not literally applicable by its terms, either. Applying the caselaw interpreting § 506(c), the court concluded that recovery was possible if the applicant proved that its efforts benefitted the SIPC (the "objective test"), or if the SIPC consented to the performance of the services (the "subjective test"). 163 B.R. at 255.

Applying these standards, the bankruptcy court held that the customers would be awarded fees only on that portion of their application dealing with the motion to jointly administer the IBEX and SIPA proceedings. It rejected, on both legal and factual grounds, the contention that the customers were responsible for initiating the SIPA liquidation proceeding. Id. at 255-56. It also held that the customers' intervention in the Newbridge proceeding and their filing of the Deamer action duplicated the trustee's efforts and were undertaken solely to benefit themselves, not the estate. Id. at 257. And because the customers' actions were both unsolicited and duplicated other efforts, the bankruptcy court concluded that they met neither the objective nor subjective standard of § 506(c). Id.

On the other hand, the court believed that the joint administration of the IBEX and SIPA proceedings saved the SIPC money. Thus, even though no general creditors of Lloyd Securities benefitted, making the customers' efforts ineligible for compensation under § 503(b)(3)(D), the bankruptcy court held that compensation was proper under the standard of § 506(c). Id. at 258.

Finally, the bankruptcy court rejected compensation under the "common fund doctrine." Although it opined that the doctrine could provide the basis for compensation in an appropriate case, the court concluded that the "fund" in this case was created for the customers themselves, not for the estate generally or for the SIPC; hence, there was no basis for the customers to demand compensation from the SIPC. Id. at 259.

6

C.

The customers appealed to the district court, which agreed with the bankruptcy court's application of Code §503(b)(3)(D), but disagreed with its analysis under § 506(c), and held that § 506(c) did not apply in a SIPA liquidation. 183 B.R. at 394. It then concluded that the bankruptcy court's reasons for denying compensation under § 503(b)(3)(D) were legally and factually correct. Id. at 395-97. Accordingly, because the circumstances of the case did not warrant compensation under §503, and the bankruptcy court's award under § 506 was erroneous as a matter of law, the district court held that the customers could not recover under SIPA § 78eee.

As a final matter, the court considered whether the customers could recover under the common fund doctrine, but concluded that, because the trustee and the SIPA were not the passive beneficiaries of the customers' efforts, but litigated the case vigorously, they could not be responsible for the customers' expenses under the doctrine. Id. at 397. The customers and their counsel now appeal.

II.

Appellants argue that the sole standard for compensation of services in a SIPA proceeding is set forth in §78eee(b)(5). They reject the conclusion of the district and bankruptcy courts that this section of SIPA must be interpreted in light of analogous provisions in the Bankruptcy Code. Section 78eee(b)(5)(A) provides that "[a]ny person seeking allowances shall file with the court an application which complies in form

and content with the provisions of" the Code. Section 78eee(b)(5)(C) further states that "the court shall give due consideration to the nature, extent, and value of the services rendered[.]" According to appellants, this set of standards is complete in itself and rests on its own, without any need to engraft portions of the Bankruptcy Code.[1]

## A.

Although appellants' argument does have some superficial plausibility, it is difficult to reconcile with the language of 15 U.S.C. § 78fff(b), which provides, in pertinent part:

> To the extent consistent with the provisions of this chapter, a liquidation proceeding shall be conducted in accordance with, and as though it were being conducted under chapters 1, 3, and 5 and subchapters I & II of chapter 7 of Title 11.

The district court held that if appellants were entitled to receive compensation under the provisions of the Bankruptcy Code, they would have to meet the strictures of § 503(b)(3)(D).

---

[1] Appellants rely on In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 848-49 (3d Cir. 1994), for the proposition that, "once an applicant for compensation is deemed generally eligible for compensation, the court must determine the amount of compensation to be awarded by analyzing the factors set forth in the governing statute, and may not engraft additional criteria." Busy Beaver involved a district court that engrafted additional requirements onto § 330(a) of the Bankruptcy Code itself. We held only that §330 must be applied in accordance with its literal terms and never decided the issue of whether the Bankruptcy Code forms a substantive overlay to SIPA. Accord United States Trustee v. Price Waterhouse, 19 F.3d 138 (3d Cir. 1994).

Appellants do not contend otherwise.[2]  Section 503 is part of chapter 5 of the Bankruptcy Code and thus appears to be incorporated into SIPA by the plain language of § 78fff(b).

Unfortunately for appellants, § 503(b)(3)(D), by its terms, applies only to chapter 9 and 11 bankruptcy cases, while §78fff(b) expressly provides that a SIPA liquidation is to be treated as a chapter 7 bankruptcy.  Taken literally, then, if §503 of the Bankruptcy Code is incorporated into SIPA, there can be no recovery for customer expenses in this (or any other) SIPA liquidation.  See Lebron v. Mechem Financial, Inc., 27 F.3d 937, 945 (3d Cir. 1994) (§ 503(b)(3)(D) does not permit creditors recovery of expenses after chapter 11 case is converted to chapter 7).

The bankruptcy court recognized this problem, but chose to incorporate the principles of § 503 into SIPA anyway.  See 163 B.R. at 252-53.  The district court agreed, adding that incorporation of the Bankruptcy Code is only required to the extent the Code is consistent with SIPA and opining that Congress could not have intended that customers of a failed securities dealer could never recover their expenses.  183 B.R. at 394.

B.

Appellants argue that § 503 was not incorporated into SIPA, relying on our opinion in SEC v. Aberdeen Securities Co., 526 F.2d 603 (3d Cir. 1975), which they believe stands for the

---

[2]The bankruptcy court awarded compensation under § 506(c), but the district court held that § 506(c) was inapplicable in a SIPA case.  Appellants do not challenge that ruling on appeal.

9

proposition that only the procedural aspects of the Bankruptcy
Code were incorporated into SIPA.  There, interpreting earlier
versions of SIPA and the 1898 Bankruptcy Act, we opined:

> Thus § 6(c) [of SIPA] is intended to
> make the flexible Chapter X <u>procedures</u>
> available for SIPA liquidations.  This does
> not mean that every provision of Chapter X,
> including provisions not related to
> procedures for the operation of a bankrupt,
> has been incorporated into the SIPA.  Only
> those provisions relating to the procedures
> for conducting the affairs of the estate
> during bankruptcy administration, except as
> inconsistent with the provision of SIPA, have
> been incorporated.

<u>Id.</u> at 606.  In <u>Aberdeen</u>, the issue was whether the provisions of
§ 243 of chapter X of the 1898 Bankruptcy Act (which authorized
compensation for services incurred by creditors and stockholders)
was incorporated into SIPA.  It is notable in that context that
the SIPA statute then in existence incorporated a chapter of the
Bankruptcy Act that explicitly permitted reorganization rather
than liquidation, even though SIPA itself required liquidation.[3]

Faced with this apparent inconsistency between the
statutory purposes of SIPA and chapter X, we looked to the
legislative history of SIPA and found considerable evidence that
Congress intended only to "make the flexible Chapter X <u>procedures</u>
available for SIPA liquidations."  526 F.2d at 606.  Because §243
of the Bankruptcy Act did not "relate to the conduct of the

---

[3]Indeed, the statutory text of § 6(c) provided for the
incorporation of chapter X "[e]xcept as inconsistent with the
provisions of this chapter and except that in no event shall a
plan of reorganization be formulated."

administration or liquidation procedures to be followed," id. we held that it was not incorporated into SIPA.

The statutory scheme today is different.  In 1978, §6(c) of SIPA was repealed and replaced by § 78fff(b), which requires that SIPA liquidations be conducted as chapter 7 bankruptcies under the Bankruptcy Code.  Chapter 7, in contrast to the repealed chapter X, provides only for liquidation.  There is therefore no inconsistency between the two statutes that would cause us to look to the legislative history to help us interpret the plain language of § 78fff(b).

The statutory framework that led the Aberdeen court to its holding no longer exists.  In light of the supervening statutory changes to both SIPA and the bankruptcy laws, we are not bound by Aberdeen.  Rather, we adopt the reasoning of the Eleventh Circuit.  In In re Government Securities Corp., 972 F.2d 328, 330 n.1 (11th Cir. 1992), cert. denied, 507 U.S. 952, 113 S. Ct. 1366 (1993), the court of appeals rejected the precise argument appellants make here.  It opined:

> [Appellant] claims that § 78fff(b) of SIPA incorporates only the procedural and not the substantive aspects of the Bankruptcy Code insofar as they are consistent with SIPA. This argument is entirely meritless.  The plain language of § 78fff(b) makes no such distinction, and explicitly incorporates . . . the Bankruptcy Code.

972 F.2d at 330 n.1[4]

---

[4]In addition, subchapter III of chapter 7 (which was not incorporated by § 78fff(b), governs stockbroker liquidations in cases where the SIPC does not initiate a liquidation proceeding under SIPA.  Such stockbrokers also have customers, yet (because it is a chapter 7 proceeding) customer claims for attorney's fees cannot be recovered.  Subchapter III was enacted within months

11

We therefore conclude that SIPA incorporates § 503 of the Bankruptcy Code and requires that a SIPA proceeding be treated like a chapter 7 bankruptcy case.  Because the customer expenses at issue are not recoverable in a chapter 7 proceeding, they are not recoverable here.[5]

III.

Appellants also argue that they are entitled to compensation under the common fund doctrine.  They assert that their efforts resulted in additional recovery to the SIPC, a benefit it is not entitled to simply receive without paying just compensation.  Both the bankruptcy and district courts concluded that this theory of recovery is available in a SIPA case, but found as a factual matter that appellants were not entitled to compensation.  See  183 B.R. at 397; 163 B.R. at 258–59.  The district court treated appellants' argument as follows:

> The customers assert that SIPC was the primary beneficiary of the customers' labors, and that it should be made to compensate them accordingly.  It cannot be said, however, that SIPC and the Trustee have been unjustly enriched as a result of the customers' efforts.  Indeed, as the Bankruptcy Court concluded, the Trustee was an active participant, and not some passive beneficiary, who "retained very competent control" over the matters at hand.  Lloyd, 163 B.R. at 256.  Accordingly, we conclude

---

after SIPA was amended.  It is therefore not anomalous (as appellants suggest) that no fees can be recovered by customers in a SIPA proceeding.  In fact, as appellees point out, it would be strange if Congress did intend for one class of claims to be compensable while the other was not.
[5]Because of our conclusion, we need not consider whether, as a factual matter, appellants' efforts met the standard for compensation under § 503.

12

> that SIPC and the Trustee are not proper
> targets of a bid to recover under the common
> fund doctrine.

Lloyd, 183 B.R. at 397.

On appeal, appellants argue that "[t]he claims which created the lion's share of the fund would have been lost had the customers, through their counsel, not performed the services." The courts below, however, found as a matter of fact that this was not true because the trustee either had tolling agreements or had filed the appropriate lawsuits, and because the customers' efforts duplicated the trustee's. We conclude that these findings are not clearly erroneous.

Additionally, the bankruptcy court noted that the "fund" recovered by the customers' efforts was customer property, not property recovered for the debtor's estate or the SIPC. 163 B.R. at 259. And although this property may well have offset some of the money that the SIPC was required to advance to those customers, the SIPC was well-represented by counsel and was entitled to make its own litigation decisions without being surcharged later by customers who chose to second-guess those decisions.

Furthermore, in spite of the litigation pursued by the customers, the Lloyd Securities general estate still contains no assets. The customers' efforts simply conferred no benefit upon the general creditors of Lloyd Securities; accordingly, they have no legitimate grounds to recover fees from the estate. Finally, appellants themselves disclaim their entitlement to any portion of the customer property fund that has been allocated to Lloyd

13

customers, presumably seeking to recover from the general estate. Because that estate is, as already stated, empty, appellants would be unable to collect their expenses in any event. We therefore agree with the district and bankruptcy courts that appellants have no claim under the common fund doctrine.[6]

IV.

We will therefore affirm the judgment of the district court.

---

[6] Because we decide the issue on factual grounds, we need not and do not decide whether the common fund doctrine is legally applicable in a SIPA liquidation.